Filed 4/22/13  P. v. Mendoza CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>VINCENT DAVID MENDOZA,<br><br>  Defendant and Appellant. | B239378<br><br>(Los Angeles County<br>Super. Ct. No. VA111663) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael A. Cowell, Judge.  Affirmed.

Mark Yanis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Vincent Mendoza appeals from a jury verdict finding him guilty of kidnapping, attempted premeditated murder, assault with a deadly weapon, and conspiracy. He contends the evidence was insufficient to support a finding that he had the specific intent to kill during his participation in the events underlying the charges, as required for attempted murder or conspiracy to commit murder. We find sufficient evidence supporting the jury's verdict and affirm the judgment.

**FACTUAL AND PROCEDURAL SUMMARY**

On August 4, 2009, victim Christina Martinez was visiting the home of her boyfriend's cousin. At approximately 2:00 a.m., appellant Vincent Mendoza, his codefendant Eddie Meraz, and Jose Ayala arrived at her location in order to take her home. Martinez had worked and socialized with Ayala over the previous two to three months. She had met appellant and Meraz just weeks before the incident through mutual friends. Instead of going straight home, Martinez agreed to accompany the men to the beach and got into a car with them. After she noticed they were not driving toward the beach, she asked the men where they were going; no one replied. Eventually, Ayala told Martinez they would have to tie her up. When she resisted, Ayala stopped the car, put a knife to her neck, and told her to stop moving or he would kill her. Appellant held Martinez's hands while Meraz tied them. Appellant then pulled out a syringe and asked Ayala about where to inject Martinez. Appellant then injected Martinez five to ten times in the neck, refilling the syringe in between injections. Martinez then began to choke and gag.

The car eventually stopped near a canyon. Ayala and Meraz pulled Martinez out of the car and her hands were untied. She was then thrown to the ground and beaten. Although she did not see who was beating her, Martinez believed it was more than one of the men and possibly all three of them. She was then hit over the head with a hard object and lost consciousness. When she was regaining consciousness, two of the men picked her up and pushed her over the side of a cliff. She fell approximately 12 feet down, and the three men then climbed down to her. Ayala accused her of setting him up and trying

2

to kill him. As appellant and Meraz stood by, Ayala pulled out his knife and sliced Martinez's neck three times. The three men then climbed back up the hillside.

Martinez realized her throat was cut open and bleeding. Meraz heard Martinez say something and alerted the other two that she was still alive. Appellant then climbed back down into the canyon. As Martinez was trying to pick herself up, appellant came up from behind her, pulled out his knife, and stabbed her two times in the side of the neck just behind her ear. The court described the motions reenacted by Martinez as "forceful thrusts." Martinez decided to pretend she was dead, in order to avoid further attacks, and allowed herself to slide down the rest of the hill. After the men left, she was able to climb back up the hill to a house where she called police. During the entire incident, appellant did not ask about what was going on or otherwise question Ayala's intentions.

The prosecutor filed an information charging appellant and Meraz with kidnapping (Pen. Code, § 207, subd. (a)),[1] attempted willful, deliberate and premeditated murder (§§ 664, 187, subd. (a)), aggravated mayhem (§ 205), assault with a deadly weapon (§ 245, subd. (a)(1)), and conspiracy to commit murder (§ 182, subd. (a)(1)).[2] The charge of aggravated mayhem was dismissed. A jury found appellant guilty of the remaining counts. The court sentenced him to a term of 11 years plus a consecutive term of 25 years to life. This appeal followed.

## DISCUSSION

Appellant contends there was insufficient evidence to support the finding that he had the specific intent to kill. Appellant contends, and respondent agrees, that the convictions for attempted murder and conspiracy to commit murder require a finding of intent to kill. Appellant argues the convictions should be reversed. We disagree.

In order for a defendant to be convicted of attempted murder, the prosecution must prove he or she "acted with specific intent to kill that victim. [Citation.]" (*People v.*

---

[1] All further statutory references are to the Penal Code.

[2] Jose Ayala was not a part of these proceedings.

3

*Smith* (2005) 37 Cal.4th 733, 739 (*Smith*).) Express malice, rather than implied malice, is required; the defendant must intend the death of the victim or know to a substantial certainty that death will be the result of his or her actions. (*Ibid.*) Similarly, in order to convict for conspiracy to commit murder, the jury must find the defendant had a specific intent to kill; such a conviction cannot be based on implied malice. (*People v. Swain* (1996) 12 Cal.4th 593, 607.) As there is rarely direct evidence of intent to kill, express malice may be "inferred from the defendant's acts and the circumstances of the crime. [Citation.]" (*Smith*, at p. 741.) If a jury concludes a defendant's use of a lethal weapon with lethal force was purposeful, an intent to kill can be inferred. (*Ibid.*)

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

The record establishes that appellant was present at all times from the point Ayala and Meraz picked up Martinez to the moment they left her at the base of the canyon bleeding from her neck and head. Martinez testified that at no point did appellant question what was going on or what Ayala intended to do. Martinez stated appellant held her hands while Meraz bound them. She further testified that appellant took out a syringe and forcefully injected her five to ten times in the neck, causing her to have difficulty in breathing. In addition, the jury could have reasonably inferred that appellant was involved in beating Martinez after she was thrown to the ground at the top of the canyon, before she was then thrown off a cliff. Ayala proceeded to grab her and slice her throat several times while appellant stood nearby. When appellant and the other two men realized she was still alive, appellant climbed back down into the canyon. He then approached Martinez from behind and stabbed her in the neck two times. This conduct alone constituted substantial evidence, such that a reasonable trier of fact could find appellant harbored the requisite intent to kill Martinez. (*People v. Rodriguez*, *supra*, 20 Cal.4th at p. 11.) Using a knife to stab another person in the neck multiple times, then

4

leaving that person at the base of a canyon, alone and bleeding, provides a sufficient basis for an inference of intent to kill.  (*Smith*, *supra*, 37 Cal.4th at p. 741.)  We conclude sufficient evidence supports the finding that appellant acted with the intent to kill Martinez as required for his convictions of attempted murder and conspiracy to commit murder.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.

5