Filed 9/29/21  P. v. Martinez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>PAUL DAVID MARTINEZ,<br><br>Defendant and Appellant. | D077998<br><br><br>(Super. Ct. No. RIF137370) |

APPEAL from an order of the Superior Court of Riverside County, Mark Petersen, Judge.  Affirmed and remanded with directions.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Charles C. Ragland and Alan L. Amann, Supervising Deputy Attorneys General, Stephanie H. Chow, Deputy Attorney General, for Plaintiff and Respondent.

Paul David Martinez appeals from the court's order denying his Penal Code[1] section 1170.95 petition to vacate his second degree murder conviction. The court relied in part on this court's prior opinion (*People v. Pagan et al.* (September 18, 2012, D059505) [nonpub. opn.] (*Martinez I*)) but it also independently evaluated the record and the evidence presented at the section 1170.95 hearing and concluded the People had established beyond a reasonable doubt that Martinez aided and abetted the murder of Gary Bolt.

Martinez contends the court erroneously: (1) concluded the prosecution's burden in the section 1170.95 proceeding was merely to establish that substantial trial evidence supported the murder conviction under direct aiding and abetting principles; (2) relied on *Martinez I, supra,* D059505 to determine the prosecution had met its burden to establish Martinez's ineligibility for relief; and (3) concluded that sufficient evidence supported his conviction based on aiding and abetting. Martinez also contends, and the People concede, that the abstract of judgment must be amended because it does not accurately reflect the court's oral pronouncement of judgment.

We affirm the trial court's order but remand for the court to amend the abstract of judgment with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

We summarize the underlying facts of Martinez and his codefendant's crimes, which are more fully set forth in *Martinez I.* This court previously granted Martinez's request to take judicial notice of the record and opinion in *Martinez I.* "[A]n appellate court decision . . . can be relied upon to determine

_____

1     Undesignated statutory references are to the Penal Code.

2

the nature of a prior conviction because it may disclose the facts upon which the conviction was based." (*People v. Trujillo* (2006) 40 Cal.4th 165, 180.)

On May 25, 2007, Martinez and his codefendant, Ryan Christopher Pagan, were at a bar in Mira Loma, California. Steven Bolt,[2] his cousin Raymond Hernandez, and several other people were also at the bar.

Hernandez had taken prescription drugs and was intoxicated. He was walking around brandishing a knife, which a bouncer took from him. Steven saw Pagan and Martinez standing inside the bar near the exit door, but did not speak to them. A fight broke out outside the bar, and Steven and Hernandez joined in it.

The next night, Pagan and Martinez were at a different bar when Steven, Hernandez and their friends arrived there. Pagan and Martinez told Hernandez that he was drunk the previous night, and that had caused a problem. Hernandez bought them beer and then socialized with his friends.

Steven testified that after he and Hernandez spoke to Martinez, he saw Martinez leave the bar several times to talk on his cell phone. Gary got into an argument regarding the music being played on the jukebox. When Steven stepped in between Gary and two other men, a punch was thrown. Steven returned a punch, and a fistfight broke out and quickly moved outside into the parking lot.

Meanwhile, Pagan and Martinez, who were not involved in the fight, went out into the parking lot. Steven testified he saw Pagan and Martinez speaking with a man sitting in a pickup truck. Hernandez later told an investigator he saw Pagan retrieve a handgun from the trunk of a car in the parking lot.

---

[2] Gary was Steven's brother. We refer to them by their first names to avoid confusion, and intend no disrespect.

While Hernandez and Steven were standing in the parking lot, a beer bottle flew past them. Steven saw Martinez rushing at him. Martinez picked up Steven, slammed him into the ground, and hit him in the face. A man kicked Martinez, and Steven grabbed Martinez's shirt, pushed him away, and got back on his feet.

Steven testified that he saw Pagan holding a revolver and looking at Hernandez, who ran away. Pagan chased Hernandez around the building and across the street, and fired several rounds at Hernandez but did not hit him. Hernandez escaped into a store.

While Pagan was chasing Hernandez, Martinez turned on Gary, who was walking toward his girlfriend's truck. Martinez hit Gary from behind, causing Gary to fall down behind the truck. Gary struggled to get back onto his feet and as he tried to enter the truck, Pagan, ran towards the truck, said "fuck you," and fatally shot Gary in the back.

Martinez did not present a defense.

The jury convicted Martinez of second degree murder of Gary and first degree attempted murder of Hernandez. The court sentenced Martinez to 22 years to life in prison.

On direct appeal, this court affirmed the judgment, concluding that sufficient evidence supported the jury's verdict based on direct aiding and abetting principles; we therefore did not reach the People's alternative argument that substantial evidence supported Martinez's conviction under the natural and probable consequences doctrine. The California Supreme Court denied review on January 3, 2013.

4

DICUSSION

I. *The Section 1170.95 Petition*

A. *Senate Bill No. 1437*

Senate Bill No. 1437 became effective in January 2019. (Stats. 2018, ch. 1015.) The law's stated purpose was "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015 § 1, subd. (f).)

Senate Bill No. 1437 effectuated this goal by amending section 188, which defines malice, and section 189, which defines the degrees of murder. (Stats. 2018, ch. 1015, § 3.) Amended section 188 states: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Amended section 189 states: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

Senate Bill No. 1437 also enacted section 1170.95, which provides resentencing relief to eligible defendants. Under subdivision (a), "[a] person

convicted of felony murder or murder under a natural and probable consequences theory may file a petition" with the sentencing court to have his or her murder conviction vacated and to be resentenced on any remaining counts "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019" under Senate Bill No. 1437.

B. *Martinez's Resentencing Petition*

Martinez filed a pro per petition to vacate his murder conviction and to be resentenced under section 1170.95. The People opposed the petition. Martinez's court-appointed counsel filed a reply. The court issued an order to show cause on Martinez's petition for resentencing and held an evidentiary hearing on the petition.

Martinez testified as follows: He did not possess or fire a gun on the night of the incident, and had no idea that Pagan was going to shoot Gary; therefore, he did not aid or abet Pagan. At the first bar, Hernandez had gotten very loud and animated with Martinez until one of Hernandez's cousins intervened and resolved the matter. The next night, Martinez approached Hernandez at the bar, and they agreed they had no problems between them. Nevertheless, Martinez stashed a beer bottle and a cue ball in his pockets and kept another beer bottle in his hand in case he needed them.

6

Martinez telephoned his friend, M.G., who afterwards went to meet Martinez at the bar, reaching there just when a fight began between Hernandez/Bolt's group and another group. Martinez went outside of the bar and saw his friends walking toward M.G.'s car. Martinez assumed they went for firearms because M.G. was known to carry a gun.

Martinez walked toward Pagan's car, and saw Gary, who gave the "impression [he] wanted to fight; so [Martinez] threw the bottle at [Gary]" but missed. They started fighting. Three other people joined in the fight against Martinez, who punched one and hit the second one with the cue ball. The third person ran off. Hernandez ran at Martinez with a knife, and Pagan shot at Hernandez. Martinez hid under a car until the shooting stopped, then got up and saw Gary trying to get into a truck. Martinez punched Gary a couple of times but Gary said, "Hey, I'm good," so Martinez stopped. Martinez turned around and saw Pagan with a gun in his hand, and he walked up to Pagan and took the gun from him. As Martinez and Pagan walked away, Martinez told a witness, "Hey, you didn't see nothing, bitch." Martinez also testified that after he had reviewed the trial evidence, he came to believe that Gary had already been shot before Martinez punched him.

The court concluded that the evidence belied Martinez's self-serving testimony and rejected most of Martinez's statements as not credible. It specifically concluded Martinez's claim that he attacked Gary after Pagan had shot him was "absurd and contradicted by logic and evidence." The court denied Martinez's petition: "[t]he opinion of the Court of Appeal that sufficient evidence was presented at trial to sustain a murder conviction based on direct aiding and abetting in the murder is law of the case." It agreed with this court's determination that sufficient evidence showed Martinez acted as a direct aider and abettor in Gary's murder.

7

However, the court also ruled that it would reach the same conclusion based on its independent review of the record. The court pointed out that it had presided over the trial and had reviewed all trial transcripts and exhibits, as well as Martinez's testimony and counsels' arguments. It stated: "Even if the statute does require the court review the case anew to determine if the court is personally convinced the People have proven beyond a reasonable doubt that petitioner is guilty of second degree murder based on direct aiding and abetting and acted with malice, the court would find the People have met that burden and deny the petition on those grounds." The court found that Martinez's testimony was contradicted by others who testified that Martinez was " 'mad dogging' the Bolt group, which is a slang term that means to stare at someone in an angry or hostile manner and may be used to convey a challenge or invitation to fight. [Martinez] was in a mindset to use violence, and his ire was directed at the Bolt group." The court concluded: "The timing, sequence of events, [Martinez's] personal grudge against members of the Bolt group, [Martinez's] prior preparation for violence, [his] knowledge of the use of the gun, and [his] continued use of violence to prevent escape by Gary [ ] all show that [Martinez] shared Pagan's intent to kill both Hernandez and Gary [ ]. By attacking Gary [ ] after having formed the intent to deliberately kill Hernandez and hearing Pagan shoot at Hernandez, [Martinez] exhibited his intent to kill Gary [ ] as well."

The court added: "[Martinez's] conduct after the murder also exhibit[ed] that he worked in concert with Pagan and that they harbored shared intents to kill. [Martinez] took the gun from Pagan and they fled the scene together immediately, but not before crudely and violently threatening a witness by pointing the gun at her head and telling her, 'You didn't see

8

nothing, bitch.' Both his flight and his threat to a witness in order to suppress evidence show consciousness of guilt. [Martinez's] flight from the state mere days after the murder and relocation to Arizona for months until his arrest also shows consciousness of guilt."

C. *Aiding and Abetting Principles*

The parties acknowledge that there is currently a split of authority as to whether a trial court may deny a section 1170.95 petition only if it finds the prosecution has proven, beyond a reasonable doubt, that the petitioner is guilty of murder under a still-valid theory. (Compare *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309[3] [holding that the prosecution need only prove "that the defendant *could* still have been convicted of murder under the new law—in other words, that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder [under current law]. This is essentially identical to the standard of substantial evidence, in which the reviewing court asks ' "whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt" ' " ] with *People v. Lopez* (2020) 56 Cal.App.5th 936, 942, review granted Feb. 10, 2021, S265974 [holding that the plain language of section 1170.95 requires "the prosecutor to prove beyond a reasonable doubt each element of first or second degree murder under current law in order to establish ineligibility"]; *People v. Rodriguez* (2020) 58 Cal.App.5th 227, review granted Mar. 10, 2021, S266652 [reaching

---

[3]    The California Supreme Court granted review to decide: "Can the People meet their burden of establishing a petitioner's ineligibility for resentencing under [ ] section 1170.95, subdivision (d)(3) by presenting substantial evidence of the petitioner's liability for murder under [ ] sections 188 and 189 as amended by Senate Bill No. 1437 (Stats. 2018, ch. 1015), or must the People prove every element of liability for murder under the amended statutes beyond a reasonable doubt?"

same result albeit for a different reason]; *People v. Clements* (2021) 60 Cal.App.5th 597, 617-618, review granted Apr. 28, 2021, S267624; *People v. Duchine* (2021) 60 Cal.App.5th 798, 813-814; *People v. Harris* (2021) 60 Cal.App.5th 939, 952, review granted Apr. 28 2021, S267802; and *People v. Hernandez* (2021) 60 Cal.App.5th 94, 103.) Martinez claims the court should have followed the second line of cases and "not apply the substantial evidence standard at [a] section 1170.95 (d) hearing, but rather sit[ ] as an independent factfinder and evaluate[ ] whether the prosecution has established guilt beyond a reasonable doubt under amended sections 188 and 189."

We need not add to this debate because after the evidentiary hearing, the court reached the same conclusion under both theories. Just as Martinez claims the court should have done, it independently concluded that the People had established Martinez's guilt beyond a reasonable doubt based on aiding and abetting principles. (See *People v. Gentile* (2020) 10 Cal.5th 830, 855 ["section 1170.95 requires the superior court to determine on an individualized basis, after considering any new or additional evidence offered by the parties, whether the defendant is entitled to relief"].) Here, the trial court properly denied Martinez's petition for resentencing because it determined, beyond a reasonable doubt, that the People had met their burden of proving Martinez was guilty of Gary's murder under current law. And substantial evidence supported the trial court's finding that Martinez acted either as a direct aider and abettor with intent or a major participant with reckless indifference to human life. (*People v. Lopez, supra*, 56 Cal.App.5th at pp. 953-954 [even if the independent factfinder standard applies at the evidentiary hearing, the standard of review on appeal is that of substantial evidence].)

10

Guilt as a direct aider and abettor requires: (1) knowledge of the direct perpetrator's intent to commit the crime; (2) intent to assist in committing the crime; and (3) conduct that in fact assists in committing the crime. (*People v. Perez* (2005) 35 Cal.4th 1219, 1225; *People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) The defendant must not only know the direct perpetrator's intent, he must share that intent. (*People v. Beeman* (1984) 35 Cal.3d 547, 560; *People v. McCoy, supra,* at p. 1118.)

Senate Bill No. 1437 "did not . . . alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator.' " (*People v. Offley* (2020) 48 Cal.App.5th 588, 595-596.) "One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*Id.* at p. 596.)

Intent to kill for purposes of murder, also known as express malice, is shown when the assailant either desires the death or knows to a substantial certainty that death will occur. (§ 188, subd. (a)(1); *People v. Smith* (2005) 37 Cal.4th 733, 739; *In re M.S.* (2019) 32 Cal.App.5th 1177, 1185.) Intent to kill may be inferred from the defendant's acts and the circumstances of the crime. (*Ibid.*)

The mental state required for implied malice murder—which also suffices to deny a section 1170.95 petition under the amended section 188 (see *People v. Soto* (2020) 51 Cal.App.5th 1043, 1057, review granted Sept. 23, 2020, S263939; *People v. Clements, supra,* 60 Cal.App.5th at p. 612)—represents a lower standard than intent to kill. (*People v. Swain* (1996) 12 Cal.4th 593, 602; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1379 ["the specific intent necessary for conviction of an aider and abettor in a murder would not be the specific intent to kill, but the intent to 'encourage and bring

11

about conduct that is criminal' "].)  Implied malice murder requires knowledge that conduct endangers the life of another and a conscious disregard for life.  (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.)

Under the direct aiding and abetting theory, an aider and abettor's mental state must be at least that required of the direct perpetrator.  " 'To prove that a defendant is an accomplice . . . the prosecution must show that the defendant acted "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." ' "  (*People v. McCoy, supra,* 25 Cal.4th at p. 1118.)  It follows that to aid and abet an implied malice murder, the direct aider and abettor must intentionally commit, encourage, or facilitate life-endangering conduct with knowledge of the perpetrator's purpose and conscious disregard for life.  (*Id.* at p. 1118 & fn. 1.)

Viewing the evidence in the light most favorable to the judgment, as detailed above, substantial evidence supports the trial court's finding that Martinez attacked Gary with intent to kill as a direct aider and abettor. Martinez testified that approximately an hour before the fight began, he had armed himself at the bar with bottles and a cue ball in case he needed them. Based on Steven's testimony that Pagan and Martinez were talking outside in the pickup truck, it is reasonable to infer they planned to support each other in attacking Hernandez and Gary, and subsequently carried out that plan.  Martinez telephoned M.G., who he knew carried a gun.  The evidence also shows that while Pagan was chasing and shooting at Hernandez, Martinez attacked Gary, who was preparing to leave the scene, Gary fell down, and while trying to get inside the truck, Pagan ran towards Gary and fatally shot him in the back.  A reasonable jury could infer that Martinez

12

assisted Pagan by preventing Gary from leaving, thus facilitating Pagan's shooting and killing him.

This same evidence supports a finding that Martinez acted with implied malice. That is, the facts detailed above constitute substantial evidence from which a trier of fact could reasonably infer that Martinez coordinated his actions to assist Pagan to use the firearm on Gary, which caused his death. Thus, the trial court did not err in finding that Martinez was ineligible for resentencing because he acted with implied malice.

## II. *Abstract of Judgment Error*

We accept the People's concession that the abstract of judgment should be modified. On November 8, 2010, the trial court sentenced Martinez to consecutive sentences of 15 years to life for count 1 and life with the possibility of parole for count 2. However, at the conclusion of the sentencing hearing, the court erroneously stated that the consecutive total term would be 22 years to life, and the abstract of judgment notes that Martinez was sentenced to 15 years to life on count 1, and a consecutive sentence of 22 years to life on count 2.

The rendition of judgment is the oral pronouncement of sentence. The recording of the judgment and sentence in the minutes or in the abstract of judgment is a purely ministerial act done by the court clerk. If there is any discrepancy between the judgment as pronounced and the judgment as entered in the minutes, the judgment as pronounced governs. (*People v. Mesa* (1975) 14 Cal.3d 466, 471-472.) Accordingly, Martinez's total sentence should be 15 years to life consecutive with life with the possibility of parole.

13

DISPOSITION

The trial court's order denying Paul David Martinez's section 1170.95 petition is affirmed.  The court is directed to amend the abstract of judgment to show Martinez is sentenced to 15 years to life consecutive with life with the possibility of parole, and forward a certified copy to the Department of Corrections and Rehabilitation.

O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.