Filed 12/15/21  P. v. Young CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B310237 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA142441) |
| v. | |
| DAN M. YOUNG, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ricardo R. Ocampo, Judge.  Affirmed.

Kathy R. Moreno, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

# INTRODUCTION

Dan M. Young appeals from the trial court's order denying his petition for resentencing under Penal Code section 1170.95.[1] He contends the court erred in denying his petition without appointing counsel and without holding a hearing under section 1170.95, subdivision (d)(1). The People concede the court erred in not appointing counsel, but argue that the error was harmless and that a hearing under subdivision (d)(1) was not required because the record of conviction established Young was not entitled to relief as a matter of law. We agree with the People and affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.     *A Jury Convicts Young of Murder and Attempted Murder, and This Court Affirms*

On October 26, 2014, in retaliation for a violent altercation with members of a rival gang, Young and a fellow gang member, Christopher Stone, carried out a pair of shootings that left one person dead and several wounded. In September 2015, to instigate a confrontation with a rival gang, Young walked up to another young man at a street corner and shot him dead.

In 2018, in connection with the October 26, 2014 shootings, a jury convicted Young on one count of first degree murder (count 1) and five counts of attempted willful, deliberate, and premeditated murder (counts 2 through 6). In connection with the September 2015 shooting, the jury convicted Young on one

---

[1]     Statutory references are to the Penal Code.

count of first degree murder (count 7) and one count of possession of a firearm by a felon (count 8). On the murder counts the jury found true the special circumstance allegation that, within the meaning of section 190.2, subdivision (a)(3), Young committed more than one murder in the first or second degree. On both murder counts the jury also found true an allegation under section 190.2, subdivision (a)(22), that Young intentionally killed the victim while Young was an active participant in a criminal street gang and committed the murder to further the activities of the gang. The court sentenced Young to two terms of life without the possibility of parole, plus 250 years to life, plus five years. We affirmed Young's convictions and prison sentence. (*People v. Stone et al.* (Mar. 2, 2020, B293532) [nonpub. opn.].)

B. *Young Files a Petition Under Section 1170.95*

In October 2020 Young filed a petition for resentencing under section 1170.95, declaring that a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine and that he was convicted of first degree felony murder,[2] for which he could not now be convicted because of changes to section 189, effective January 1, 2019. In particular, Young alleged he was not the actual killer; he did not, with the intent to kill, aid or abet the actual killer in the commission of murder in the first degree; he was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime

---

[2] Contrary to Young's assertion in his opening brief, he did not allege in his petition he was convicted of murder under the natural and probable consequences doctrine.

3

or felony; and the victim was not a peace officer in the performance of his or her duties. Young also requested counsel.

The superior court, without appointing counsel, summarily denied Young's petition. The court ruled: "The petitioner was convicted of 2 counts of first degree murder. The jurors were never instructed on the theory of felony murder nor on the theory of natural and probable consequence doctrine. [¶] In addition, the jury not only found the petitioner guilty of 2 counts of first degree murder but also found true[ ] the special circumstance under [section 190.2, subdivision (a)(3)], multiple murder. (See CALCRIM No. 721) In fact, by finding these allegations to be true, the jury had to have found that petitioner was the actual killer and if not the actual killer, acted with the intent to kill (see CALCRIM 702). [¶] Therefore, due to the jury's findings as stated and pursuant to Penal Code section [189, subdivision (e)(1)], the petitioner has not made a prima facie showing and does not qualify for resentencing to Penal Code section 1170.95."

Young then filed a motion for reconsideration, asking the trial court to "vacate its order denying the petition and issue an order vacating the convictions and sentences imposed on counts 1 and 2." He contended that the record demonstrated the jury was given "instructions that concerned the natural [and] probable consequence theory of guilt" and that "a finding of true on section [190.2, subdivision (a)(3),] does not amount to a finding of major participation or reckless indifference to human life, and thus does not preclude the petitioner from 1170.95 relief." Young's motion included, as exhibits, some of the jury instructions from his trial, including those on aiding and abetting, conspiracy, and first and

4

second degree murder.  The court denied the motion, and Young timely appealed from the order denying his petition.

## DISCUSSION

A.      *Senate Bill No. 1437 and the Section 1170.95 Petition Procedure*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437) "eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule." (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); see §§ 188, subd. (a)(3), 189, subd. (e); *People v. Gentile* (2020) 10 Cal.5th 830, 842 [Senate Bill 1437 was enacted "'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'"].)  "Senate Bill 1437 also added section 1170.95 to the Penal Code, which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis*, at p. 957, fn. omitted; see *Gentile*, at p. 859.)

"Section 1170.95 envisions three stages of review of a petition for resentencing." (*People v. Wilson* (2021) 69 Cal.App.5th 665, 675; see *Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)  First, the petitioner "must file a petition in the sentencing court averring that:  '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree

5

murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted of first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.'" (*Lewis*, at pp. 959-960; see § 1170.95, subd. (a)(1)-(3).)

Second, if a petition under section 1170.95 contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), the court, after appointing counsel, must "assess whether the petitioner has made a 'prima facie showing' for relief." (*Lewis*, *supra*, 11 Cal.5th at pp. 960, 963; see § 1170.95, subd. (c); *People v. Wilson*, *supra*, 69 Cal.App.5th at p. 675; *People v. Barboza* (2021) 68 Cal.App.5th 955, 962.) "In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, 'allowing the court to distinguish petitions with potential merit from those that are clearly meritless.'" (*People v. Mancilla* (2021) 67 Cal.App.5th 854, 863.) The prima facie inquiry, however, is limited. The "''court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.'''" (*Lewis*, at p. 971; see *Barboza*, at p. 962; *People v. Duchine* (2021) 60 Cal.App.5th 798, 813, 815; *People v. Drayton* (2020) 47 Cal.App.5th 965, 980, disapproved on another ground in *Lewis*, at p. 963.)

The court's authority to resolve the petition at the prima facie stage "is limited to readily ascertainable facts from the

record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton*, *supra*, 47 Cal.App.5th at p. 980; see *Lewis*, *supra*, 11 Cal.5th at p. 972 ["at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion'"]; *People v. Clayton* (2021) 66 Cal.App.5th 145, 153 [same]; *People v. Harris* (2021) 60 Cal.App.5th 939, 958 [same], review granted Apr. 28, 2021, S267802.) "'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Lewis*, at p. 971; accord, *People v. Jenkins* (2021) 70 Cal.App.5th 924, 932; see *People v. Duchine*, *supra*, 60 Cal.App.5th at p. 815 ["absent a record of conviction that conclusively establishes that the petitioner engaged in the requisite acts and had the requisite intent, the trial court should not question his evidence"].)

Third, if "the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.'" (*Lewis*, *supra*, 11 Cal.5th at p. 960; see § 1170.95, subd. (d)(1); *People v. Wilson*, *supra*, 69 Cal.App.5th at p. 675.) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on

7

the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3); see *Lewis*, at p. 960.) The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence. (§ 1170.95, subd. (d)(3); see *Lewis*, at p. 960.)[3]

B. *The Superior Court Erred in Not Appointing Counsel for Young, but the Error Was Harmless*

Young argues the superior court erred in denying his petition without appointing counsel and in finding he had not made a prima case of eligibility for relief, including relief on his convictions for attempted murder.[4] The People concede, and we

---

[3] In October 2021 the Legislature amended section 1170.95. Among other changes, the amendments (1) apply section 1170.95 to convictions for voluntary manslaughter and attempted murder; (2) state the requirement to appoint counsel, if requested, in new subdivision (b)(3), rather than in subdivision (c); (3) affirm that the standard of proof at the hearing on the order to show cause is proof beyond a reasonable doubt; and (4) clarify that "a finding there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (See Stats. 2021, ch. 551, § 2 (Senate Bill No. 775).) Because the Legislature did not pass these amendments as urgency legislation, they will become effective on January 1, 2022. (See Cal. Const., art. IV, § 8, subd. (c).)

[4] In his opening brief, Young contended the superior court also erred by denying his petition based on the record of conviction. In his reply brief, however, he concedes the court's reliance on the record of conviction was not error. (See *Lewis*, *supra*, 11 Cal.5th at pp. 970-971.)

8

agree, the superior court erred in not appointing counsel. (See *Lewis*, *supra*, 11 Cal.5th at p. 963 ["petitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition"].) The People argue, however, that the error was harmless and that the court did not err in finding Young failed to make a prima facie case for relief because the record of conviction shows Young is not eligible for relief as a matter of law. (See *Lewis*, at p. 974 ["a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing"'"].) The People are correct.

Although in his petition Young alleged he was convicted of murder under a no-longer-valid theory of felony murder, he contends on appeal the superior court erred in finding he was not eligible for relief under section 1170.95 because the trial court instructed the jury on a no-longer-valid theory of murder (and now attempted murder) under the natural and probable consequences doctrine. Young points to two instructions: the first on "first or second degree murder with malice aforethought" (CALCRIM No. 520), the second on "liability for conspirators' acts" (CALCRIM No. 417). Because neither instructed the jury on a no-longer-valid theory of murder or attempted murder under the natural and probable consequences doctrine, the court's error in not appointing counsel was harmless. (See *People v. Daniel* (2020) 57 Cal.App.5th 666, 678 [error in not appointing counsel for the petitioner was harmless where the jury instructions showed he was convicted under a still-valid theory of murder], review dism. Dec. 1, 2021, S266336.)

1. *The Instruction on Murder Did Not Include a No-longer-valid Theory Under the Natural and Probable Consequences Doctrine*

The trial court instructed the jury with CALCRIM No. 520 that Young was charged in counts 1 and 7 with murder and that to prove Young guilty the People had to prove Young "committed an act that caused the death of another person" and did so with "malice aforethought." The instruction explained that there were two kinds of malice aforethought, express malice and implied malice, and that the defendant acted with express malice if he unlawfully intended to kill. The defendant acted with implied malice, the instruction explained, "if:

1. He intentionally committed an act;

2. The natural and probable consequences of the act were dangerous to human life;

3. At the time he acted, he knew his act was dangerous to human life;

AND

4. He deliberately acted with conscious disregard for human life."

The instruction stated that, if the jurors decided Young committed murder, it was murder of the second degree, unless the People proved it was murder of the first degree, as defined in a separate instruction.

Although he is vague about it, Young appears to suggest the language in the second element of the implied malice instruction was an instruction on a no-longer-valid theory under the natural and probable consequences doctrine. It was not. "It is true that the doctrine of implied malice has a 'natural and probable consequences' element." (*People v. Roldan* (2020)

10

56 Cal.App.5th 997, 1004, review granted Jan. 20, 2021, S266031; see *People v. Gonzalez* (2012) 54 Cal.4th 643, 653 ["[m]alice is implied when a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses"].)  But Senate Bill 1437 "removed the natural and probable consequences doctrine as a basis for a murder conviction only insofar as it applied to aider and abettor liability. . . .  [T]hat liability arose when ""a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.""  [Citation.]  In contrast to this vicarious liability, under which the mens rea of an aider and abettor towards the killing is irrelevant, the doctrine of implied malice requires that the perpetrator actually appreciate that death is the natural and probable consequence of his or her actions, and further requires that the perpetrator consciously disregard that danger.  [Citations.]  Senate Bill 1437 did nothing to remove implied malice as a basis for a second degree murder conviction."  (*Roldan*, at pp. 1004-1005; see *People v. Rivera* (2021) 62 Cal.App.5th 217, 231-232 ["implied malice is based on 'the "natural and probable consequences" of a defendant's *own* act,'" and although Senate Bill 1437 "'abolished the natural and probable consequences doctrine' as a theory of vicarious liability, 'it maintained the viability of murder convictions based on implied malice, and the definition of implied malice remains unchanged'"], review granted June 9, 2021, S268405; *People v. Clements* (2021) 60 Cal.App.5th 597, 618 ["Senate Bill No. 1437 amended section 188 to require the prosecution to prove that all principals to a

11

murder acted with malice aforethought.  [Citation.]  Though this change abolished the natural and probable consequences doctrine, it maintained the viability of murder convictions based on implied malice, and the definition of implied malice remains unchanged."], review granted Apr. 28, 2021, S267624; *People v. Daniel*, *supra*, 57 Cal.App.5th at p. 677, fn. 4 [in "defining implied malice, CALCRIM No. 520 mentions the concept of the 'natural and probable consequences' of a defendant's *own* act," whereas the "natural and probable consequences doctrine abolished by Senate Bill No. 1437 . . . is a theory of vicarious liability"]; *People v. Garcia* (2020) 57 Cal.App.5th 100, 117 [Senate Bill 1437 "did not repeal the law imposing criminal liability for implied malice murder"], review granted Feb. 10, 2021, S265692.)

> 2.     *The Instructions on Conspiracy Did Not Include a No-longer-valid Theory Under the Natural and Probable Consequences Doctrine*

The trial court instructed the jury with CALCRIM No. 416 that the People had presented evidence of a conspiracy and that a member of a conspiracy is criminally responsible for the acts of any other member of the conspiracy performed to help accomplish the goal of the conspiracy.  The trial court stated that, to prove a defendant was a member of a conspiracy in this case, the People had to prove, among other things, that "[t]he defendant intended to agree and did agree with one or more other co-participants to commit murder" and that, "[a]t the time of the agreement, the defendant and one or more [of] the other alleged members of the conspiracy intended that one or more of them would commit murder."  The court explained that "[t]he People must prove that

12

the members of the alleged conspiracy had an agreement and intent to commit murder" and that the jury "must decide as to each defendant whether he or she was a member of the alleged conspiracy."

The court then instructed the jury with CALCRIM No. 417 that, in addition to having criminal responsibility for the crimes he or she conspires to commit, a member of a conspiracy "is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or design of the conspiracy." "To prove that a defendant is guilty of the crimes charged in counts one through six," the court instructed the jury, "the People must prove that:

1.      The defendant conspired to commit one of the following crimes: murder;

2.      A member of the conspiracy committed attempted murder to further the conspiracy;

AND

3.      Attempted murder was a natural and probable consequence of the common plan or design of the crime that the defendant conspired to commit."

Young suggests the "natural and probable consequence" language in CALCRIM No. 417 was an instruction on a no-longer-valid theory of murder and attempted murder under the natural and probable consequences doctrine. But the conspiracy on which the trial court instructed the jury was a conspiracy to commit murder (albeit a conspiracy to commit murder generally, not a conspiracy to murder a particular person). To find Young liable as a conspirator for the offenses charged in counts 1 through 6, therefore, the jury had to find he agreed and intended

13

to commit the target offense of murder. Attempted murder and a conspiracy to commit murder share the requirement of an intent to kill. (*People v. Juarez* (2016) 62 Cal.4th 1164, 1169-1170; see *id.* at p. 1174 ["The element of attempted murder that is missing from conspiracy to commit murder is a direct but ineffectual act toward accomplishing the intended killing."].)[5] Which means the instructions did not permit the jury to convict Young on the murder and attempted murders charged in counts 1 through 6 under the natural and probable consequences doctrine because that doctrine "applies to unintended, nontarget offenses." (*People v. Medrano* (2021) 68 Cal.App.5th 177, 185; see *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 645 [because the defendants "were charged with conspiracy to *murder*, not conspiracy to commit a lesser crime that resulted in murder," there was "no possibility they were found guilty of murder on a natural and probable consequences theory"]; *Medrano*, at pp. 183-184 ["in convicting [the defendant] of first degree murder, the jury did not rely on the natural and probable consequences doctrine because it found him guilty of conspiracy to commit first degree murder"].)

Put differently, the instructions here did not permit the jury to find Young guilty of murder or attempted murder under a conspiracy theory without finding he intended to kill. (See *People v. Swain* (1996) 12 Cal.4th 593, 607 ["a conviction of conspiracy to commit murder requires a finding of intent to kill"].) That removes the theory of conspiracy liability presented to the jury on counts 1 through 6 from those theories invalidated by Senate

---

[5]    There is no such thing as a conspiracy in which the target offense is attempted murder. (See *People v. Iniguez* (2002) 96 Cal.App.4th 75, 79 [conspiracy to commit attempted murder is a "legal falsehood"].)

14

Bill 1437. (See *Lewis*, *supra*, 11 Cal.5th at p. 959 ["the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, *did not act with the intent to kill*, or was not a major participant in the underlying felony who acted with reckless indifference to human life'" (italics added)]; *People v. Farfan* (Nov. 19, 2021, B309786) ___ Cal.App.5th ___, ___ [2021 WL 5409896, p. 1] [a finding the defendant acted with intent to kill establishes he is "ineligible for section 1170.95 relief as a matter of law"].)[6]

## DISPOSITION

The order denying Young's section 1170.95 petition is affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.          FEUER, J.

---

[6]     That the conspiracy the trial court instructed on here was one to commit murder, rather than a conspiracy to commit a lesser offense that resulted in murder or attempted murder, distinguishes this case from the case on which Young principally relies, *People v. Offley* (2020) 48 Cal.App.5th 588. In that case, the prosecution relied on a theory of conspiracy to commit assault with a firearm. (See *id.* at p. 599.)

15